COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and O'Brien
Argued at Norfolk, Virginia

CITY OF NORFOLK

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS

v.        Record No. 1138-16-1

FEBRUARY 14, 2017

TAMMY GRAY

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Karla J. Soloria; Heather A. Mullen; Office of the  City Attorney,
on briefs), for appellant.  Appellant submitting on briefs.

Adam B. Shall (Taylor Walker, P.C., on brief), for appellee.

The City of Norfolk ("employer") appeals the June 9, 2016 decision of the Workers'

Compensation Commission (the "Commission") finding employer liable to pay for surgery and

treatment of Tammy Gray's ("Gray") work-related injuries performed by an unauthorized

treating physician.  Employer argues it should not be liable to pay for the surgery and treatment

by the new physician because Gray did not establish "adequate grounds to warrant a change in

treating physician," and because the Commission relied on facts contrary to the evidence when it

determined that a change in Gray's treating physician was warranted.

"In reviewing a decision of the commission, we view the evidence in the light most

favorable to claimant, the party prevailing below.  'Decisions of the commission as to questions

of fact, if supported by credible evidence, are conclusive and binding on this Court.'"  Starbucks

Coffee Co. v. Shy, 61 Va. App. 229, 238, 734 S.E.2d 638, 688 (2012) (quoting Manassas Ice &

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)). However, the Court reviews *de novo* the Commission's legal determinations. Id.

Employer first argues that there was insufficient evidence "that Dr. Skidmore[, the authorized physician,] was providing inadequate or medically inappropriate care to [Gray] to justify a change in authorized treating physicians." Whether evidence was sufficient to show that a change in treating physicians was warranted is a question of fact that will not be overturned if supported by credible evidence. Id.

Code § 65.2-603 requires an employer to provide medical care for an employee injured on the job. Typically, the injured employee is required to use one of the employer's authorized treating physicians; however Code § 65.2-603(C) makes an exception for emergency situations and for "other good reasons." Among the "other good reasons" exceptions are circumstances when a claimant attains medical treatment from a physician *before* obtaining authorization from the Commission to do so; in such cases, the employer will be liable to pay for treatment by the physician

> if the employee, without authorization but in good faith, obtains medical treatment different from that provided by employer, and it is determined that the treatment provided by the employer was inadequate treatment for the employee's condition and the unauthorized treatment received by the claimant was medically reasonable and necessary treatment, the employer should be responsible, notwithstanding the lack of prior approval by the employer.

Shenandoah Products, Inc. v. Whitlock, 15 Va. App. 207, 212, 421 S.E.2d 483, 486 (1992) (analyzing the "other good reasons" exception of Code § 65.2-603). The Commission correctly relied upon this authority when it made its decision in this case.

Here, the Commission, as the factfinder, determined that Gray sought medical treatment from Dr. Mitchell, an unauthorized physician, in good faith. Viewed in the light most favorable to Gray, the prevailing party below, the record supports the Commission's conclusion. Credible

evidence shows that Gray went to see Dr. Mitchell only after seeing Dr. Skidmore. Dr. Mitchell treated Gray in the past and was familiar with her medical history, and had even performed a surgery that successfully alleviated her previous neck pain; thus, it was reasonable for Gray to believe Dr. Mitchell might have a better or more thorough insight into her spinal issues resulting from the accident. Further, Gray did not continue seeing both Dr. Skidmore and Dr. Mitchell for an extended period of time; instead, she saw Dr. Mitchell only twice during her seven-month treatment with Dr. Skidmore. At multiple appointments with Dr. Skidmore, Dr. Skidmore stated that Gray's pain was "a bit of a mystery," and nothing Dr. Skidmore had done by that point significantly reduced Gray's pain. When Gray stopped seeing Dr. Skidmore and went instead to Dr. Mitchell, it was because she believed Dr. Skidmore did not know what was causing her pain. Thus, the record supports the holding of the Commission that established that Gray sought out Dr. Mitchell's treatment in good faith.

The treatment rendered by Dr. Skidmore was clearly inadequate to treat Gray's condition. Dr. Skidmore stated twice that Gray's pain was a "mystery" to him, and even after multiple diagnostic tests he could not find an answer. Dr. Skidmore prescribed three different medication regimens for Gray; the first two regimens were completely ineffective, and the final gave Gray only "mild improvement." At no point did Dr. Skidmore show any indication that he would consider treatments other than medications. In contrast, Dr. Mitchell was familiar with Gray's medical history, had previously performed successful neck surgery, and indicated that another surgery was the only option that could possibly alleviate her pain. Therefore, viewed in the light most favorable to Gray, sufficient credible evidence established that Dr. Skidmore's treatment was inadequate to effectively treat Gray's condition.

Finally, the unauthorized treatment rendered by Dr. Mitchell was reasonable and necessary under these circumstances because no other treatment options were effective in

reducing Gray's pain. Her pain ranged between a seven and a ten on a scale of ten, and medications prescribed by Dr. Skidmore gave little or no relief. Again, Dr. Mitchell, who worked with Gray in the past regarding unrelated spinal issues, offered the only possible solution to Gray's back pain in this instance. A third doctor, Dr. Mathern, confirmed that no other options were available to relieve Gray's pain aside from surgery. Thus, the evidence was sufficient to prove that Dr. Mitchell's treatment was reasonable and necessary.

Since there was credible evidence to support a finding that Gray sought unauthorized medical attention in good faith, Dr. Skidmore's treatment was inadequate, and Dr. Mitchell's treatment was reasonable and necessary, we hold that the Commission did not err in holding employer liable for payment to Dr. Mitchell. See Whitlock, 15 Va. App. at 212, 421 S.E.2d at 486.

Employer next argues that the Commission erred by considering facts contrary to the evidence when its opinion presumed that only Dr. Mitchell was able to compare a pre- and post-accident MRI, when in reality, both doctors were able to do so. Despite employer's argument, the Commission only considered facts that were contained in the record.

Both Dr. Skidmore and Dr. Mitchell were eventually able to compare a pre-accident MRI with a post-accident MRI; however, it was only Dr. Mitchell who had any insight as to what may be causing Gray's pain. Dr. Mitchell, who previously performed a surgery on Gray that was successful in relieving her pain, recommended surgery that would remove the plate he placed during the previous surgery and perform an "anterior cervical discectomy and fusion." Aside from the surgery, Dr. Mitchell had no other options for Gray except to maintain the status quo. Dr. Skidmore had approximately seven months in which to compare MRIs and come up with possible treatment options, but he only ever prescribed medications which were not relieving Gray's pain. When Dr. Mitchell was able to compare a pre- and post-accident MRI, he was able

to point to what could be causing the pain, and consequentially recommended surgery. The facts merely presented two possible competing theories, and the Commission was not incorrect simply because it chose one possible theory over the other. "[A] finding by the Commission upon conflicting facts . . . is conclusive and binding . . ., absent fraud, when such determination is supported by competent, credible evidence." City of Portsmouth Sheriff's Dep't v. Clark, 30 Va. App. 545, 553, 518 S.E.2d 342, 346 (1999) (quoting C.D.S. Constr. Servs. v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978)). The evidence was sufficient to support a finding that employer should be held liable to pay for Dr. Mitchell's treatment of Gray. Thus, the Commission did not consider facts contrary to the evidence and did not err in that regard.

For the foregoing reasons, we hold that the Commission did not err in finding employer liable for Gray's treatment by an unauthorized physician, Dr. Mitchell, and affirm its decision.

Affirmed.